# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| ARNOLD GARRETT, | ) |
| Claimant, | ) ) ) |
| vs. | ) ) Case No. 1:17-CV-1981-CLS |
| NANCY A. BERRYHILL, Acting Commissioner, Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Claimant, Arnold Garrett, commenced this action on November 26, 2017, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying his claim for a period of disability and disability insurance benefits.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ improperly evaluated his credibility and complaints of subjective symptoms, and improperly considered the medical opinions in the record. Upon review of the record, the court concludes that these contentions lack merit, and the Commissioner's ruling is due to be affirmed.

To demonstrate that pain or another subjective symptom renders him disabled, a claimant must "produce 'evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.'" *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991) (quoting *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). If an ALJ discredits subjective testimony of pain, "he must articulate explicit and adequate reasons." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing *Jones v. Bowen*, 810 F.2d 1001, 1004 (11th Cir. 1986); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986)).

The ALJ in the present case properly applied these legal principles. He found that claimant's medically determinable impairments could reasonably be expected to cause some symptoms and limitations, but that claimant's statements concerning the

intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record."[1] This conclusion was in accordance with applicable law. *See Marbury v. Sullivan,* 957 F.2d 837, 839 (11th Cir. 1992) ("*After* considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence.") (citing *Wilson v. Heckler,* 734 F.2d 513, 517 (11th Cir. 1984)) (emphasis supplied).

The ALJ also adequately articulated reasons to support his findings. He pointed out that there were inconsistencies between claimant's testimony and the objective evidence. For example, even though claimant stated that he had worked for only one month after July 2009, the record reflected that he received $1,066 in wages during the second quarter of 2014, and additional earnings in other years. Additionally, the ALJ observed that, even though claimant brought a non-prescribed cane to the administrative hearing, and testified that he had severe gout flare-ups two to three times a month, the medical record only reflected treatment for one gout flare-up. The ALJ also considered the opinions of consultative examiner Dr. Anand Iyer, M.D., and state agency physician Dr. Robert Heilpern, M.D, as well as treating physician records and the effects of claimant's obesity.[2]

---

[1] Tr. 26.
[2] *See* Tr. 26-27.

Claimant challenges some of those findings as either unsupported by the record or inconsistent with applicable law. First, he asserts that the ALJ failed to account for his inability to afford treatment. Claimant testified during the administrative hearing that, although his pain level during a flare-up escalates to a level warranting emergency room treatment, he has only been to the emergency room one or two times because does not have any money to pay the charges he would incur. Instead, he has been receiving treatment at the Quality of Life Clinic, where treatment presumably is available at either no cost or a reduced cost.[3] The ALJ did not discuss claimant's testimony regarding his inability to afford treatment, instead only pointing out the inconsistency between claimant's testimony and the number of times he received emergency treatment.

It is well settled that "poverty excuses [a claimant's] noncompliance" with medical treatment. *Dawkins v. Bowen,* 848 F.2d 1211, 1213 (11th Cir. 1988) (alteration supplied). Thus, "while a remediable or controllable medical condition is generally not disabling, when a 'claimant cannot afford the prescribed treatment *and can find no way to obtain it*, the condition that is disabling in fact continues to be disabling in law.'" *Id.* (quoting *Taylor v. Bowen,* 782 F.2d 1294, 1298 (5th Cir. 1986)) (emphasis supplied). The Eleventh Circuit has also held that "when an ALJ relies on noncompliance as the *sole ground* for the denial of disability benefits, and

---

[3] Tr. 44-46.

4

the record contains evidence showing that the claimant is financially unable to comply with prescribed treatment, the ALJ is required to determine whether the claimant was able to afford the prescribed treatment." *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (citing *Dawkins,* 848 F.2d at 1214) (emphasis supplied).

Here, the ALJ did not rely upon claimant's non-compliance with medical treatment as the sole ground for his finding of non-disability. Instead, he found that claimant's failure to seek additional treatment was one relevant factor in determining whether claimant's subjective complaints were consistent with the other evidence in the record. As discussed more fully below, the ALJ's other considerations were supported by the record. Moreover, claimant's testimony indicates that, even though he was unable to afford emergency room treatment, he was able to obtain treatment at the Quality of Life Clinic. Thus, the ALJ's consideration of claimant's failure to seek additional treatment was not reversible error. For example, the Eleventh Circuit observed in the case of *Beegle v. Social Security Administration, Commissioner,* 482 F. App'x 483 (11th Cir. 2012), that :

> the ALJ must consider evidence showing that the claimant is unable to afford medical care before denying disability insurance benefits based upon the claimant's non-compliance with such care. . . . Nonetheless, reversible error does not appear where the ALJ primarily based her decision on factors other than non-compliance, and where the claimant's non-compliance was not a significant basis for the ALJ's denial of disability insurance benefits.

*Id.* at 487 (citing *Ellison,* 355 F.3d at 1275-76) (alterations supplied).

Claimant also asserts that his treatment records do not support the ALJ's finding. It is true that claimant has long reported to his treating physicians that he experiences pain and swelling in his big toe and knee as a result of gout, and that the pain worsens with standing and walking.[4] But the mere existence of a medical condition, even one that claimant reports causes severe pain, does not establish disability. Instead, the relevant consideration is the effect of that condition, considered in combination with any of her other impairments, on claimant's ability to perform substantial gainful work activities. *See* 20 C.F.R. § 404.1505(a) (defining a disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). *See also Bowen v. Yuckert,* 482 U.S. 137, 146 (1987) ("The [Social Security] Act 'defines "disability" in terms of the effect a physical or mental impairment has on a person's ability to function in the workplace.'") (quoting *Heckler v. Campbell,* 461 U.S. 458, 459-60 (1983)) (alteration supplied). The record as a whole does not support a finding of disabling functional limitations.

Claimant also asserts that Dr. Iyer's consultative examination supports a finding of disability, and that the ALJ should have afforded it more significant

---

[4] Tr. 250-55, 317-19.

weight. Social Security regulations provide that, in considering what weight to give *any* medical opinion, the Commissioner should evaluate: the extent of the examining or treating relationship between the doctor and patient; whether the doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors. *See* 20 C.F.R. § 404.1527(c). *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments.").

Dr. Iyer examined claimant on February 20, 2015. Claimant reported hip pain, a dislocated left wrist, and gout in his feet, ankles, and knees. The gout reportedly flared up two to three times monthly, causing bilateral feet swelling with difficulty standing, walking, climbing, bending, and lifting. Claimant brought a cane to the examination to assist him with stability and ambulation. Claimant experienced difficulty getting on and off the examination table, and he complained of pain in multiple joints during that portion of the examination. He displayed full strength, except for 4/5 right hand grip strength and 2/5 left hand grip strength. He had no muscle atrophy, a negative straight leg raise test, and abnormal gait that necessitated the use of a cane for stability. He could not squat or walk on his heels or toes. He

had full range of motion in his neck, shoulders, back, and elbows, but reduced range of motion in his left wrist, both hips, both knees, and both ankles. An x-ray of his left hip was normal. Dr. Iyer assessed claimant with the following conditions: (1) history of bilateral hip pain, possibly secondary to bursitis, not confirmed by records; (2) history of bilateral hand pain, likely secondary to gout, confirmed by records; (3) history of bilateral feet pain, likely secondary to gout; (4) history of bilateral ankle pain, likely secondary to gout, not confirmed by records; (5) history of bilateral knee pain, likely secondary to gout or osteoarthritis, not confirmed by records; (6) history of hyperlipidemia; (7) history of uncontrolled hypertension, not on medication; (8) history of left wrist pain, likely secondary to gout, not confirmed by records; and (9) history of prior left wrist fracture, status post repair, confirmed by records. He concluded that claimant would have "some impairment of functions involving: sitting, standing, walking, climbing steps, bending, lifting, twisting, carrying, reaching overhead, writing, typing, opening jars, tying shoes, dressing, and handling. The patient does not have significant limitation of functions involving: hearing and speaking. The cane is necessary for stability and ambulation."[5]

The ALJ afforded "good, but lesser, weight to the findings of Dr. Iyer, as he offered only vague and undefined limitations, and appeared to rely significantly upon

---

[5] Tr. 313.

the claimant's allegations, as opposed to any medical records."[6] The court agrees that Dr. Iyer's assessment of "some impairment of functions" in various areas is not very helpful in the determination of disability. It is clear that claimant experiences *some* impairments, but the relevant question is whether he experiences *disabling* impairments, and Dr. Iyer's assessment simply does not shed much light on that determination.

    Finally, claimant asserts that the ALJ improperly considered the assessment of Dr. Robert Heilpern, the state agency physician. Dr. Heilpern did not treat or examine claimant. Instead, he completed a Residual Functional Capacity Assessment after reviewing claimant's medical records. Dr. Heilpern indicated that claimant could occasionally lift and/or carry 50 pounds, and frequently lift and/or carry 25 pounds. He could stand and/or walk 6 hours, and also sit 6 hours, during an 8-hour work day. He could perform unlimited pushing and pulling movements; frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; and frequently stoop, kneel, crouch, and crawl. He could perform unlimited overhead reaching and feeling, but his ability to perform gross and fine manipulation would be limited in the left hand. He would have no visual or communicative limitations. He could have unlimited exposure to wetness, noise, fumes, odors, dusts, gases, and poor ventilation, but he would need to avoid concentrated exposure to extreme cold and heat, humidity,

---

[6] Tr. 27.

9

and vibration, and he would need to avoid all exposure to hazards such as machinery and heights. The limitations Dr. Heilpern assessed were the result of gout.[7] Dr. Heilpern also stated:

> Clmt has MDI for Gout, however, he is noncompliant with meds. If clmt were compliant with meds and/or sought treatment for his condition, he would likely have improvement of his symptoms. Imaging does not show any joint damage due to the Gout. During an exacerbation, clmt is likely to have limitations on his handling and fingering. It is reasonable to assume that clmt would have some limitations during an exacerbation of gout, but it would likely not be to the severity shown in CE dated 2/10/15 [Dr. Iyer's examination report] with medication treatment and compliance.

Tr. 81 (alteration supplied).

The ALJ afforded Dr. Heilpern's assessment significant weight, because it was "the only comprehensive assessment of the claimant's physical capabilities," and because it was "generally consistent with, and supported by, the treating source medical records and he has a greater expertise in the regulatory requirements."[8] Claimant asserts that it was wrong for the ALJ to give significant weight to Dr. Heilpern's opinion because Dr. Heilpern did not examine claimant. Contrary to claimant's suggestion, Social Security regulations provide that the opinions of state agency physicians are entitled to substantial consideration. *See* 20 C.F.R. §§ 404.1527(e) & 404.1513a(b)(1) (stating that, while the ALJ is not bound by the

---

[7] Tr. 79-81.
[8] Tr. 27.

10

findings of a State Agency physician, the ALJ should consider such a reviewing physician to be both "highly qualified" and an "expert" in Social Security disability evaluation). *See also Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981) ("The Secretary was justified in accepting the opinion of Dr. Gordon, a qualified reviewing physician, that was supported by the evidence, and in rejecting the conclusory statement of Dr. Harris, a treating physician, that was contrary to the evidence."); *Surber v. Commissioner of Social Security Administration*, No. 3:11-cv-1235-J-MCR, 2013 WL 806325, *5 (M.D. Fla. March 5, 2013) (slip copy) ("State agency medical consultants are non-examining sources who are highly qualified physicians and experts in Social Security disability evaluation, and their opinions may be entitled to great weight if supported by evidence in the record."). Moreover, the ALJ did not rely *solely* upon Dr. Heilpern's assessment; he also considered claimant's testimony, the medical records, claimant's work history, and Dr. Iyer's consultative report. The ALJ's decision to give substantial weight to Dr. Heilpern's assessment was supported by substantial evidence of record.

In summary, the court concludes the ALJ's decision was based upon substantial evidence and in accordance with applicable legal standards. Accordingly, the decision of the Commissioner is due to be affirmed.

An appropriate Final Judgment will be entered contemporaneously herewith.

DONE this 20th day of August, 2018.

                                            _____
                                            United States District Judge